IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:08CR3069 |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| MARCOS ANDREW MUNOZ, | ) | REPORT, RECOMMENDATION, |
| | ) | AND ORDER |
| Defendant. | ) | |

Defendant has filed a motion to suppress evidence and statements obtained as a result of a traffic stop on Interstate 80 in Nebraska on November 7, 2005. A hearing on the motion was held before me on October 8, 2008. I now recommend that the motion be denied.

FACTS

Defendant was driving a rented Pontiac eastbound on Interstate 80 in Kimball County, Nebraska when he was stopped by a Nebraska State Patrol ("NSP") trooper for driving 85 mph in a 75 mph zone. The trooper was Robbie Jackson, a ten-year veteran of the NSP with extensive training in recognition of drugs and drug paraphernalia as well as consumption methods and medical treatment for drug use.

Jackson approached the passenger side of the Pontiac. There were two occupants, the defendant and one passenger, Kristy Smith. The car had been rented in Smith's name. Defendant had no driver's license, and his driving privileges had been suspended in Colorado. Trooper Jackson had the defendant exit the car and be seated in his cruiser.

In the cruiser, Trooper Jackson obtained the defendant's name and date of birth and called that information in to his dispatcher to obtain a criminal history check. He also asked defendant about his travel plans.

Jackson then exited the patrol vehicle and re-approached the Pontiac to get identification information from the passenger. He also asked her some general questions about her travel plans. Smith provided Jackson with her driver's license, and he returned to the cruiser and called that information to his dispatcher for a criminal history check on her.

Trooper Jackson received information from his dispatcher that the defendant had "a criminal history" without any specifics. He then completed a citation for defendant for speeding and operating a vehicle without a license. He handed defendant back the rental agreement and explained the citation. As Munoz reached for the door handle to exit the cruiser, Jackson said, "OK, well I would like to ask you guys for a moment of your time." He then explained to Munoz information about recurring problems of drugs coming into Nebraska from Colorado. Jackson asked Munoz if he was involved in any drug activity, to which Munoz responded he was not. Jackson asked Munoz for permission to search the vehicle, explaining that he would also ask Smith, since she had rented the vehicle. Munoz responded that Jackson would have to ask Smith for permission to search the vehicle. Munoz did not state that he didn't want Jackson to search anything, and he did not at any time give Jackson consent to search anything.

Jackson returned to the Pontiac with Smith's driver's license and asked Smith for permission to search it. She granted consent. Jackson asked her if there was anything illegal in the vehicle, and

she responded that other than some alcohol or beer, she was unaware of anything. Jackson directed Smith out of the vehicle so he could search it. He accompanied her to the rear passenger door of his cruiser so she could be seated inside. At that time Munoz got Jackson's attention and attempted to engage Jackson in discussion about search criteria and the availability of a drug dog. Jackson stated, "I don't need it," and closed the cruiser door. Jackson did not ask Munoz if he owned any luggage or bags in the vehicle, and did not ask for permission to search any such items. Munoz did not thereafter voice any objection to the search.

Jackson proceeded to search, beginning with the front passenger compartment. On the passenger floorboard was a backpack which bore no identifying or ownership indicia on its exterior, later determined to belong to defendant. Jackson picked it up and placed it on the passenger seat and heard the clanking of beer bottles in it. He unzipped the pack and removed the beer bottles, and noticed that the pack was still "fairly heavy." Additional searching in the backpack produced a loaded .45 caliber handgun, the gun which forms the basis of the pending indictment. He can be heard at this point on the videotape saying "bingo." He asked Smith if the backpack was hers, and she stated that it was the defendant's. He then drew his weapon, placed Munoz under arrest for possession of a concealed weapon, restrained him, and called for backup. He asked Munoz if he had previously been convicted of a felony, to which Munoz answered affirmatively.

Jackson then proceeded with his search of the Pontiac. Further searching the backpack, he found a digital scale and what he suspected was a small quantity of crystal methamphetamine. In the console between the front seats he found two glass pipes which he recognized from his training and experience to be of the type

used for smoking crack cocaine and/or methamphetamine. At this point in the video he can be heard to say, "Crack pipes." They contained no residue of any kind. He then examined an "Aquafina" water bottle which was in a side pocket of the backpack, and discovered a false compartment in it containing what he suspected was crystal methamphetamine. Smith was then arrested.

## ARGUMENTS

Defendant claims that he was seized in the absence of reasonable, articulable suspicion, in violation of the Fourth Amendment, when he was not permitted to exit the patrol cruiser at the conclusion of the traffic stop, that is, upon the issuance of the traffic citation. He argues that because he was never told by the trooper that he was "free to go" or other similar language, the extension of the stop beyond the issuance of the citation was not consensual, because a reasonable person in the defendant's position would not have considered himself permitted "to disregard the [trooper] and go about his business." California v. Hadari D., 499 U.S. 621, 628 (1991). Further, defendant argues that the trooper's failure to ask him whether he owned anything in the car or to otherwise clarify the ownership of the backpack, rendered the search of the backpack without his permission violative of the Fourth Amendment, as well. Finally, he argues that any statements made after the opening of the backpack are "fruit of the poisonous tree" which should also be suppressed. Wong Sun v. United States, 371 U.S. 471 (1963).

The government argues that the trooper's discussion of and asking Munoz questions about drug trafficking were part of a consensual encounter between a citizen and law enforcement.

4

Further, it claims that Smith's consent to search the vehicle was voluntarily given.  Finally, it argues that even if the search of the backpack violated the Fourth Amendment, the evidence should still be admissible under the "inevitable discovery" doctrine, because the discovery of the pipes in the console would have provided probable cause to search the entire vehicle and its contents, thus leading to the inevitable discovery of the contents of the backpack as well.

LEGAL ANALYSIS

For purposes of this motion, I shall assume that the defendant was seized in violation of the Fourth Amendment, and that the search of his backpack violated his Fourth Amendment rights, as well.  I proceed to discuss the "inevitable discovery" doctrine.  As currently formulated in the Eighth Circuit, the inevitable discovery doctrine provides:

> [T]he evidence found need not be suppressed if the two prongs of the inevitable discovery doctrine are proved by a preponderance of the evidence: (1) there is a reasonable probability the evidence would have been discovered by lawful means in the absence of police misconduct, and (2) the government was actively pursuing a substantial, alternative line of investigation at the time of the constitutional violation.

United States v. Thomas, 524 F.3d 855, 859 (8th Cir. 2008) (Colloton, J., concurring), quoting United States v. Glenn, 152 F.3d 1047, 1049 (8th Cir. 1998).

Thus, for the government to prevail on the motion, it must show first, that the trooper was pursuing an "alternative"

5

investigation, that is, for something other than the gun which was discovered; and second, that in the course of that investigation, the gun would have been discovered anyway, because the glass pipes would have been discovered in the consensual search of the vehicle for drugs, providing probable cause to search all the contents of the vehicle.

I have no difficulty with the "alternative line of investigation" prong, for it is clear from the evidence that once the traffic portion of the stop ended, the trooper was investigating this defendant and his companion for possible trafficking in illegal drugs. There is no evidence of any other purpose for the trooper's questioning of them at that time.[1] The evidence clearly establishes that the purpose of the trooper's investigation was *not* to find a concealed weapon, nor to connect the defendant with any kind of offense involving a weapon.

The government's argument on inevitable discovery is well taken. Had the trooper not searched the backpack first, he would have searched the console in accordance with Kristy Smith's consent. There is no evidence that her consent was anything other than completely voluntary, and there is no argument that any search of the vehicle would *not* have included the center front console. Hence it is clear that the glass pipes would have been discovered in the search of the vehicle.

It is also true that discovery of the glass pipes would have precipitated a full search of the contents of the vehicle, including the backpack. The pipes were immediately recognized by

---

[1] To the extent that the trooper's earlier questions may be considered, there is no evidence in the record of any focus by the trooper on possible weapons violations.

the trooper as "crack pipes," and he testified as to his background and training in making such identifications. He also testified as to why such pipes are used in ingesting crack cocaine and methamphetamine.

The discovery of drug paraphernalia (even without any drug residue) provides probable cause to search the entire automobile in which the paraphernalia were found for the presence of controlled substances. See, e.g., United States v. Terry, 400 F.3d 575 (8th Cir. 2005) (legal discovery of contraband ammunition during stop created probable cause to search entire vehicle); United States v. Rowland, 341 F.3d 774, 785 (8th Cir. 2003) (discovery of razor blades, rolling papers, and a syringe during a *Terry* search was sufficient to create probable cause to search entire vehicle under automobile exception); United States v. Fladten, 230 F.3d 1083, 1086 (8th Cir. 2000) (observation of "an item commonly used in the manufacture of methamphetamine ... in plain view in the back seat" of an automobile gave officers probable cause to search other parts of the automobile for further contraband or evidence). Possession of drug paraphernalia is a crime under Nebraska law. Neb. Rev. Stat. §28-441. Its discovery in a vehicle clearly provides a "fair probability"—-indeed, a fact--that criminal activity is afoot, and provides probable cause to believe that evidence of related criminal activity would be found in the vehicle. Illinois v. Gates, 462 U.S. 213, 238 (1983).

I conclude that it is more probable than not that the gun would have ultimately been discovered by lawful means in the absence of any alleged police misconduct. United States v.

7

Johnson, 528 F.3d 575 (2008), citing Nix v. Williams, 467 U.S. 431, 444 (1984); United States v. Thomas, supra.[2]

IT THEREFORE HEREBY IS RECOMMENDED to the Hon. Richard G. Kopf, United States District Judge, pursuant to 28 U.S.C. §636(b)(1)(B) that the defendant's motion to suppress, filing no. 19, be denied in all respects.

FURTHER, IT HEREBY IS ORDERED:

1. The parties are given until ten working days after the filing of the transcript of the hearing to file their objections to this recommendation. The parties are further notified that failure to object to this recommendation as provided in the local rules may result in a waiver of the right to appeal the district judge's adoption of findings in the recommendation.

2. Trial of this matter is set to commence at 9:00 a.m. on January 12, 2009 in Courtroom #1, United States Courthouse and Federal Building, Lincoln, Nebraska, before the Hon. Richard G. Kopf, United States District Judge. Trial is scheduled for a duration of three trial days. Jury selection will be held at commencement of trial.

Dated October 23, 2008.

BY THE COURT

s/ *David L. Piester*
United States Magistrate Judge

---

[2] In Thomas, the concurring judges suggest that the Eighth Circuit's "present formulation" of the inevitable discovery doctrine is incorrect as a misapplication of Nix. It is unnecessary to reach such concerns in this case as the evidence clearly demonstrates the applicability of the doctrine, whichever formulation may be utilized.

8